The STATE of Texas, Appellant,

v.

Craig GERSTENKORN, Appellee.

No. 04–06–00901–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 12, 2007.

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for Appellant.

Richard D. Woods, Law Office of Richard D. Woods, San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

The State of Texas appeals the trial court's order granting a motion to suppress. The trial court granted the motion to suppress on the basis that the appellee, Craig B. Gerstenkorn, was stopped for suspicion of DWI while driving in a "gated community," which the trial court concluded was not a public place as a matter of law.[1] We reverse the trial court's order and remand the cause to the trial court for further proceedings.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We review *de novo* the court's application of the law to the facts. *Id.* Because the issue presented in this case is whether the court properly applied the law defining "public place" to the facts, we review the issue *de novo*.

The penal code defines "public place" as any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops. TEX. PEN.CODE ANN. § 1.07(a)(40) (Vernon Supp.2006). The definition of public place

---

1. In his reply brief, Gerstenkorn also raises an issue as to whether suppression was proper because the testimony that the officer stopped him was inconsistent with the police report that stated that a witness initially stopped him. The officers explained during their testimony that the witness initially stopped Gerstenkorn and that the officer later stopped him a second time after being dispatched to the neighborhood. In this case, the trial court entered explicit verbal findings at the end of the hearing, stating its belief that gated communities are not public places and that the trial court was "looking for case law on it right now to make sure that I'm making [the] right decision." *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex.Crim.App.2006) (requiring trial court to make findings when requested); *State v. Wise*, No. 04–04–00695–CR, 2005 WL 2952357, at *1–2 (Tex.App.-San Antonio Oct.26, 2005, no pet.) (noting findings made at the end of a hearing constitute findings of fact and conclusions of law) (not designated for publication). Because the trial court entered explicit findings, we do not make assumptions as to whether the trial court also would have suppressed the evidence if it had found the officers' testimony not to be credible. *See Cullen*, 195 S.W.3d at 698–99 (noting purpose of required findings is to provide appellate court with a basis upon which to review trial court's application of the law to the facts and to avoid leaving the appellate court in the undesirable position of making assumptions about the reasons for the trial court's decision). Accordingly, we do not address Gerstenkorn's alternative issue because it would require us to apply appellate presumptions or assumptions which the explicit findings are intended to avoid. *See State v. Ross*, 32 S.W.3d 853, 858 (Tex.Crim.App. 2000) (noting non-prevailing party can avoid effects of appellate presumptions by obtaining explicit findings).

is cast in broad language. *Shaub v. State,* 99 S.W.3d 253, 256 (Tex.App.-Fort Worth 2003, no pet.); *State v. Nailor,* 949 S.W.2d 357, 359 (Tex.App.-San Antonio 1997, no pet.). The relevant inquiry is whether the public has access to the place. *Shaub,* 99 S.W.3d at 256; *Loera v. State,* 14 S.W.3d 464, 467–68 (Tex.App.-Dallas 2000, no pet.). The definition of public place is open-ended and leaves discretion to the courts to expand its parameters where appropriate. *Loera,* 14 S.W.3d at 467.

In *Woodruff v. State,* the Austin court considered whether an appellant who was arrested for DWI on a street in Bergstrom Air Force Base was in a public place. 899 S.W.2d 443, 443–44 (Tex.App.-Austin 1995, pet. ref'd). The court noted that the base was fenced, its gates were guarded, and passes were required; however, the court noted that the proper focus should be on the extent of actual access and not on the formalities by which access is gained. *Id.* at 444–45. Although the base had monitored access, an officer testified that given the right set of circumstances anyone could gain access. *Id.*

In this case, one of the officers testified that the community was gated with a security guard and limited access. According to a witness who initially stopped Gerstenkorn, however, Gerstenkorn stated that he was lost and did not know how to get out of the neighborhood. This is evidence that anyone could gain access to the community under the right set of circumstances even though the community was gated. Because no evidence was introduced to establish that access by the public to the gated community was more restrictive than access to an air force base, we hold that the gated community described in our record was a public place as defined by the penal code. *See Woodruff,* 899 S.W.2d at 444–45.

The trial court's order is reversed, and the cause is remanded to the trial court for further proceedings.