

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-155-CR**

ROY GENE DAWSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

-----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. INTRODUCTION

Appellant Roy Gene Dawson appeals his conviction for driving while intoxicated, subsequent offense ("DWI"). In three points, Dawson argues that the evidence is legally and factually insufficient to support his conviction and

---

[1] *See* TEX. R. APP. P. 47.4.

that the trial court erred by awarding restitution. We modify in part and affirm as modified.

## II. FACTUAL BACKGROUND

On March 26, 2006, at approximately 9:30 a.m., Linda Major, a Century 21 real estate agent, arrived at her office on the square in Granbury, Texas to meet with clients. When she pulled into a Century 21 designated parking spot in front of a law office, she noticed Dawson standing outside his car, which was parked in another designated spot. Major testified that Century 21 had four designated parking spots in front of the law office. Major then got out of her car and told Dawson that he was parked in a reserved parking spot. Dawson started cussing at Major and then got in his car and drove away. Major testified that Dawson appeared intoxicated.

Major then went inside the office. Major stated that when she went out on the back porch, she saw Dawson drive by and yell something at her. Major stated that when her clients arrived, they took their car to look at the property and left her car in the parking lot in front of the law office. Approximately an hour and a half to two hours later, Major received a call from the police telling her that she needed to come back to the office. When Major arrived at the office, she noticed that all four tires on her car were flat.

Robert Thomas Christian, the District Attorney for the 355th Judicial District Court in Hood County, testified that at approximately 1:00 p.m. he was walking towards the courthouse when two ladies approached him and told him that a man was letting air out of tires. The ladies told Christian that they had already called the police and pointed Christian to a "small red car." Christian then walked over to the parking lot behind the Century 21 office and saw a red car backing up and then going forward. Christian personally saw Dawson operate the car. Christian approached the passenger side window and knocked on the car's roof to get Dawson's attention. Christian asked Dawson to "hang around" until the police arrived.

When the police arrived, Officer John Ubinger, a patrol officer with the Granbury Police Department, administered two field sobriety tests. After Dawson failed the horizontal gaze nystagmus test and the walk-and-turn test, he was arrested for DWI.

On April 13, 2007, a jury found Dawson guilty of the offense of DWI and sentenced him to twenty years' imprisonment and a $5,000 fine. Additionally, the trial court ordered Dawson to pay $500 in restitution to Major for slashing her tires.

### III. LEGAL SUFFICIENCY

In his first point, Dawson contends that the evidence is legally insufficient to support his DWI conviction because no rational trier of fact could have found that he operated a motor vehicle in a public place.

#### A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

#### B. Applicable Law

A person commits the offense of DWI if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). The Texas Penal Code defines a public place as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." *Id*. § 1.07(a)(40) (Vernon Supp. 2007).

**C.     Analysis**

Dawson argues that the evidence is legally insufficient because the parking lot was not a public place.  The State asserts that the parking lot was a public place because it was accessible to the public.

The definition of public place is cast in broad language. *Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.); *State v. Nailor*, 949 S.W.2d 357, 359 (Tex. App.—San Antonio 1997, no pet.); *see also State v. Gerstenkorn*, 239 S.W.3d 357, 358 (Tex. App.—San Antonio 2007, no pet.).  The relevant inquiry is whether the public has access to the place. *Shaub*, 99 S.W.3d at 256; *Loera v. State*, 14 S.W.3d 464, 467 (Tex. App.—Dallas 2000, no pet.).  If the public has *any* access to the place in question, it is public.  *Woodruff v. State*, 899 S.W.2d 443, 445 (Tex. App.—Austin 1995), *cert. denied*, 516 U.S. 1128 (1996).  The definition of public place is open-ended and leaves discretion to the courts to expand its parameters where appropriate. *Loera*, 14 S.W.3d at 467; *Gerstekorn*, 239 S.W.3d at 359.

Here, Major testified that the public could walk through the parking lot. She also stated that the parking lot was not fenced in.  Christian stated that although the parking lot is gravel and not paved, it is a public place because people were walking through it on March 26, 2006.  He further stated that a

5

substantial group of the public had access to the parking lot. Both Officer Dirk Sain, a Granbury bike patrol officer, and Officer Ubinger testified that the parking lot was a public place. Additionally, the police videotape shows several people walking through the parking lot when the police were questioning Dawson. The evidence shows that although the parking lot was small and unpaved, it was still a public place because it was accessible to the public.

Additionally, there was further evidence presented that demonstrated that Dawson was driving in a public place while intoxicated. First, Major testified that between 9:45 a.m. and 10:00 a.m., while standing on the second-floor porch, Dawson drove back by the building on Bridge Street and yelled at her. She stated that Dawson appeared to be intoxicated. Second, Christian stated that Dawson "backed up like anybody would back up to then go out onto I believe it's Bridge Street." Lastly, Newell Dean Dawson, Dawson's cousin, stated that Dawson cusses when he has been drinking and Major testified that Dawson cussed at her when she got to Century 21.

After reviewing the evidence in the light most favorable to the verdict, we conclude that any rational juror could have found that the parking lot was a public place. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). Accordingly, we overrule Dawson's first point.

6

## IV. FACTUAL SUFFICIENCY

In his second point, Dawson asserts that the evidence is factually insufficient to demonstrate that he was intoxicated at the time that he was arrested.

### A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not

7

enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

**B. Analysis**

Christie Profitt testified that she was cleaning a law office on the square when she heard a man, later identified as Dawson, yelling obscenities outside

8

the building.[2] Profitt then went to the window and saw Dawson pull out two knives, one with a white handle and one with a black handle, from his boot and coat pocket, and begin slashing tires on a car. Profitt called 9-1-1. Dawson then walked across the street to his car. Although Profitt could not tell if Dawson had started the car's ignition, she testified that the car was moving.

Profitt stated that Dawson appeared to be drunk, but she did not see Dawson with an alcoholic beverage and she did not smell alcohol on Dawson.

Christian stated that after the police arrived, he stood behind the Century 21 office and watched the police question Dawson. Christian testified that after the police arrived, he saw a bottle of Mogan David a/k/a "Mad Dog 20/20 wine" in Dawson's car. Christian stated that the bottle was half empty. Christian testified that Dawson seemed very intoxicated and that he had a hard time keeping his balance. Christian stated that Dawson appeared to be in a daze. However, Christian said that he did not smell alcohol on Dawson.

Officer Sain, testified that he and his partner, Officer Kevin Clapp, responded to a call of a man poking holes in tires. When Officer Sain arrived at the parking lot behind the Century 21 office, he saw Christian talking to

---

[2] Profitt originally stated that she saw Dawson slashing the tires between 10:00 a.m. and 11:00 a.m., but then later stated that the police officers arrived around 1:00 p.m.

Dawson who was in the driver's seat of a red car. Officer Sain then asked Dawson to get out of the car. Officer Sain did a patdown search of Dawson and found a white paring knife in Dawson's front right coat pocket.[3] Officer Sain handcuffed Dawson during the patdown search because Dawson was asked to put his hands on the car and he kept turning around and removing his hands from the car.

Officer Sain testified that he detected alcohol on Dawson's person.[4] He also stated that during the walk-and-turn test, Dawson could not walk heel-to-toe, was unsteady on his feet, and had to use his arms for balance. Officer Sain testified that Dawson had slurred speech, "red, glassy eyes," and that he yelled at a female officer on the scene.

Officer Ubinger testified that at approximately 1:05 p.m., he was dispatched to a call of a male with two knives cutting tires. Officer Ubinger stated that when he arrived at the back parking lot of the Century 21 office, Officers Clapp, Sain, and Anna Edwards were already on the scene. Officer

---

[3] Officer Clapp located another knife in the passenger seat of Dawson's car.

[4] Officer Sain stated that he did not put in his police report that he smelled alcohol on Dawson because he did not perform the field sobriety tests.

Ubinger said that he smelled a strong alcoholic beverage odor coming from Dawson and that Dawson's speech was slurred.

Officer Ubinger then read Dawson his *Miranda* rights. Dawson told Officer Ubinger that he had "some beer" and that he had been driving his car. Officer Ubinger then performed the horizontal gaze nystagmus test on Dawson. Officer Ubinger stated that Dawson failed the test because he observed the onset of nystagmus prior to forty-five degrees and noticed a distinct nystagmus at the maximum deviation. However, Officer Ubinger did state that the jerking of the eyes could exist in normal persons. Dawson also attempted the walk-and-turn test three times, but he failed to complete the test because he did not follow the instructions given to him.

Newell testified that he owns a custom boot shop one block off the square in Granbury. Newell stated that on March 26, 2006, Dawson was working in the shop and doing community service work on the square. He stated that he saw Dawson three times that day. Newell said that he last saw Dawson leave the shop at approximately 12:00 p.m. to 12:10 p.m. and that Dawson was sober when he left the shop. Dawson told Newell that he would be back, but Newell did not see Dawson again.

Additionally, the police videotape shows Dawson failing to keep his hands by his side and failing to stand heel-to-toe during the walk-and-turn test. The

11

videotape also shows Dawson moving his head, not just his eyes, during the horizontal gaze nystagmus test.

Dawson argues that the evidence is factually insufficient to prove that he was intoxicated because no one testified that they saw him drinking and Officer Sain did not state that Dawson smelled of alcohol in his police report. Dawson also claims that although there is some evidence to support his conviction, there is more evidence to support his argument that he was not intoxicated.

However, contrary to Dawson's assertion, our review of the record shows ample evidence that Dawson was intoxicated. First, although Dawson argues that the evidence was insufficient because no one testified that they saw him drinking, Dawson admitted to Officer Ubinger that he had been drinking. Additionally, both Officer Sain and Officer Ubinger testified that Dawson smelled of alcohol. There was also evidence presented that Dawson had slurred speech, glassy eyes, and that he was unable to keep his balance.

The evidence supporting the conviction is not so weak, nor the contrary evidence so overwhelming, that the jury's verdict is clearly wrong or manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417. Therefore, we hold that the evidence is factually sufficient to support the jury's finding that Dawson was intoxicated. Accordingly, we overrule Dawson's second point.

12

## V. RESTITUTION

In his final point, Dawson claims that the trial court erred by granting restitution to Major because there was no factual basis in the record to support the restitution award.

We review challenges to restitution orders under an abuse of discretion standard. *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999). An abuse of discretion occurs if the trial court acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

Article 42.037(a) of the Texas Code of Criminal Procedure provides that "the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense or to the compensation to victims of crime fund. . . ." TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (Vernon Supp. 2007). If the offense results in damage, loss, or destruction of a victim's property, the trial court may order the defendant to return the property or if the return of the property is impossible, to pay the victim the value of the property. *Id.* art. 42.037(b)(1).

Texas law provides three limits on the amount of restitution a trial court can order. *See Campbell*, 5 S.W.3d at 696. The amount must be just and

13

supported by a factual basis within the loss of the victim. *Id.* The restitution ordered must also be for an offense for which the convicted person is criminally responsible. *Id.* at 697; *Gordon v. State*, 707 S.W.2d 626, 629 (Tex. Crim. App. 1986). Finally, restitution is proper only for the victim or victims of the offense for which the offender is charged. *Campbell*, 5 S.W.3d at 697; *Martin v. State*, 874 S.W.2d 674, 679–80 (Tex. Crim. App. 1994).

The State has the burden of proving the amount of loss sustained by the victim of a crime by a preponderance of the evidence for the purpose of factually supporting a restitution order. TEX. CODE CRIM. PROC. ANN. art. 42.037(k) (Vernon Supp. 2007).

Here, there is no evidence in the record to establish any amount of restitution. The State points to Exhibit A attached to the trial court's judgment to demonstrate that the restitution was just. However, Exhibit A merely states that Dawson owes Major $500 in restitution, it does not state what the amount is based on. Accordingly, because there is a complete absence of factual basis in the record, we hold that any reference to restitution should be deleted from the judgment.[5]  *See Wallace v. State*, 75 S.W.3d 576, 583 (Tex.

---

[5] Although Dawson only appealed the restitution order on the basis that it was not supported by the record, we further observe that the restitution was not for the offense for which Dawson was charged, i.e., DWI. *See Campbell*, 5 S.W.3d at 696–97.

14

App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003).

Thus, we sustain Dawson's third point.

Accordingly, we modify the trial court's judgment to delete any reference

to restitution.  TEX. R. APP. P. 43.2(b).

## VI.  CONCLUSION

Having modified the trial court's judgment to delete the restitution order,

we affirm the trial court's judgment as modified.

PER CURIAM

PANEL F:  HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  July 10, 2008

15