COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-155-CR

 

 

ROY GENE DAWSON                                                           APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Roy Gene Dawson
appeals his conviction for driving while intoxicated, subsequent offense (ADWI@).  In three points, Dawson argues that the
evidence is legally and factually insufficient to support his conviction and
that the trial court erred by awarding restitution. We modify in part and
affirm as modified.

II.  Factual Background

On March 26, 2006, at
approximately 9:30 a.m., Linda Major, a Century 21 real estate agent, arrived
at her office on the square in Granbury, Texas to meet with clients.  When she pulled into a Century 21 designated
parking spot in front of a law office, she noticed Dawson standing outside his
car, which was parked in another designated spot.  Major testified that Century 21 had four
designated parking spots in front of the law office.  Major then got out of her car and told Dawson
that he was parked in a reserved parking spot. Dawson started cussing at Major
and then got in his car and drove away. 
Major testified that Dawson appeared intoxicated.

Major then went inside the
office.  Major stated that when she went
out on the back porch, she saw Dawson drive by and yell something at her.  Major stated that when her clients arrived,
they took their car to look at the property and left her car in the parking lot
in front of the law office.  Approximately
an hour and a half to two hours later, Major received a call from the police
telling her that she needed to come back to the office.  When Major arrived at the office, she noticed
that all four tires on her car were flat.








Robert Thomas Christian, the
District Attorney for the 355th Judicial District Court in Hood County,
testified that at approximately 1:00 p.m. he was walking towards the courthouse
when two ladies approached him and told him that a man was letting air out of
tires.  The ladies told Christian that
they had already called the police and pointed Christian to a Asmall red car.@  Christian then walked over to the parking lot
behind the Century 21 office and saw a red car backing up and then going
forward.  Christian personally saw Dawson
operate the car.  Christian approached
the passenger side window and knocked on the car=s roof to get Dawson=s attention.  Christian asked
Dawson to Ahang around@ until the police arrived.

When the police arrived,
Officer John Ubinger, a patrol officer with the Granbury Police Department,
administered two field sobriety tests. 
After Dawson failed the horizontal gaze nystagmus test and the
walk-and-turn test, he was arrested for DWI.

On April 13, 2007, a jury
found Dawson guilty of the offense of DWI and sentenced him to twenty years= imprisonment and a $5,000 fine. 
Additionally, the trial court ordered Dawson to pay $500 in restitution
to Major for slashing her tires.

 

 








III.  Legal Sufficiency

In his first point, Dawson
contends that the evidence is legally insufficient to support his DWI
conviction because no rational trier of fact could have found that he operated
a motor vehicle in a public place.

A.     Standard of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

B.     Applicable Law

A person commits the offense
of DWI if the person is intoxicated while operating a motor vehicle in a public
place.  TEX. PENAL CODE ANN. ' 49.04(a)
(Vernon 2003).  The Texas Penal Code
defines a public place as Aany place to which the public or a substantial group of the public has
access and includes, but is not limited to, streets, highways, and the common
areas of schools, hospitals, apartment houses, office buildings, transport
facilities, and shops.@  Id. ' 1.07(a)(40) (Vernon Supp. 2007).

 








C.     Analysis

Dawson argues that the
evidence is legally insufficient because the parking lot was not a public
place.  The State asserts that the
parking lot was a public place because it was accessible to the public.

The definition of public
place is cast in broad language.  Shaub
v. State, 99 S.W.3d 253, 256 (Tex. App.CFort Worth 2003, no pet.); State v. Nailor, 949 S.W.2d 357, 359
(Tex. App.CSan Antonio
1997, no pet.); see also State v. Gerstenkorn, 239 S.W.3d 357, 358 (Tex.
App.CSan Antonio 2007, no pet.).  The
relevant inquiry is whether the public has access to the place.  Shaub, 99 S.W.3d at 256; Loera v.
State, 14 S.W.3d 464, 467 (Tex. App.CDallas 2000, no pet.).  If the
public has any access to the place in question, it is public.  Woodruff v. State, 899 S.W.2d 443, 445
(Tex.  App.CAustin 1995), cert. denied, 516 U.S. 1128 (1996).  The definition of public place is open‑ended
and leaves discretion to the courts to expand its parameters where appropriate.
Loera, 14 S.W.3d at 467; Gerstekorn, 239 S.W.3d at 359.








Here, Major testified that
the public could walk through the parking lot. She also stated that the parking
lot was not fenced in.  Christian stated
that although the parking lot is gravel and not paved, it is a public place
because people were walking through it on March 26, 2006.  He further stated that a substantial group of
the public had access to the parking lot. 
Both Officer Dirk Sain, a Granbury bike patrol officer, and Officer
Ubinger testified that the parking lot was a public place.  Additionally, the police videotape shows
several people walking through the parking lot when the police were questioning
Dawson.  The evidence shows that although
the parking lot was small and unpaved, it was still a public place because it
was accessible to the public. 

Additionally, there was
further evidence presented that demonstrated that Dawson was driving in a
public place while intoxicated.  First,
Major testified that between 9:45 a.m. and 10:00 a.m., while standing on the
second-floor porch, Dawson drove back by the building on Bridge Street and
yelled at her.  She stated that Dawson
appeared to be intoxicated.  Second,
Christian stated that Dawson Abacked up like anybody would back up to then go out onto I believe it=s Bridge Street.@  Lastly, Newell Dean Dawson, Dawson=s cousin, stated that Dawson cusses when he has been drinking and
Major testified that Dawson cussed at her when she got to Century 21.

After reviewing the evidence
in the light most favorable to the verdict, we conclude that any rational juror
could have found that the parking lot was a public place.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App.
2005).  Accordingly, we overrule Dawson=s first point.








IV.  Factual Sufficiency

In his second point, Dawson
asserts that the evidence is factually insufficient to demonstrate that he was
intoxicated at the time that he was arrested.

A.     Standard of Review

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the verdict.  Watson, 204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual sufficiency must include a discussion of
the most important and relevant evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).         B.     Analysis








Christie Profitt testified
that she was cleaning a law office on the square when she heard a man, later
identified as Dawson, yelling obscenities outside the building.[2]  Profitt then went to the window and saw
Dawson pull out two knives, one with a white handle and one with a black
handle, from his boot and coat pocket, and begin slashing tires on a car.  Profitt called 9-1-1.  Dawson then walked across the street to his
car.  Although Profitt could not tell if
Dawson had started the car=s ignition, she testified that the car was moving. 

Profitt stated that Dawson
appeared to be drunk, but she did not see Dawson with an alcoholic beverage and
she did not smell alcohol on Dawson. 

Christian stated that after
the police arrived, he stood behind the Century 21 office and watched the
police question Dawson.  Christian
testified that after the police arrived, he saw a bottle of Mogan David a/k/a AMad Dog 20/20 wine@ in Dawson=s car.  Christian stated that the bottle was half
empty. Christian testified that Dawson seemed very intoxicated and that he had
a hard time keeping his balance. 
Christian stated that Dawson appeared to be in a daze.  However, Christian said that he did not smell
alcohol on Dawson.








Officer Sain, testified that
he and his partner, Officer Kevin Clapp, responded to a call of a man poking
holes in tires.  When Officer Sain
arrived at the parking lot behind the Century 21 office, he saw Christian
talking to Dawson who was in the driver=s seat of a red car.  Officer
Sain then asked Dawson to get out of the car. 
Officer Sain did a patdown search of Dawson and found a white paring
knife in Dawson=s front
right coat pocket.[3]  Officer Sain handcuffed Dawson during the
patdown search because Dawson was asked to put his hands on the car and he kept
turning around and removing his hands from the car.

Officer Sain testified that
he detected alcohol on Dawson=s person.[4]  He also stated that during the walk-and-turn
test, Dawson could not walk heel-to-toe, was unsteady on his feet, and had to
use his arms for balance.  Officer Sain
testified that Dawson had slurred speech, Ared, glassy eyes,@ and that he yelled at a female officer on the scene.








Officer Ubinger testified
that at approximately 1:05 p.m., he was dispatched to a call of a male with two
knives cutting tires.  Officer Ubinger
stated that when he arrived at the back parking lot of the Century 21 office,
Officers Clapp, Sain, and Anna Edwards were already on the scene.  Officer Ubinger said that he smelled a strong
alcoholic beverage odor coming from Dawson and that Dawson=s speech was slurred.

Officer Ubinger then read
Dawson his Miranda rights.  Dawson
told Officer Ubinger that he had Asome beer@ and that he
had been driving his car. Officer Ubinger then performed the horizontal gaze
nystagmus test on Dawson. Officer Ubinger stated that Dawson failed the test
because he observed the onset of nystagmus prior to forty-five degrees and
noticed a distinct nystagmus at the maximum deviation.  However, Officer Ubinger did state that the
jerking of the eyes could exist in normal persons.  Dawson also attempted the walk-and-turn test
three times, but he failed to complete the test because he did not follow the
instructions given to him.

Newell testified that he owns
a custom boot shop one block off the square in Granbury.  Newell stated that on March 26, 2006, Dawson
was working in the shop and doing community service work on the square.  He stated that he saw Dawson three times that
day.  Newell said that he last saw Dawson
leave the shop at approximately 12:00 p.m. to 12:10 p.m. and that Dawson was
sober when he left the shop.  Dawson told
Newell that he would be back, but Newell did not see Dawson again.








Additionally, the police
videotape shows Dawson failing to keep his hands by his side and failing to
stand heel-to-toe during the walk-and-turn test.  The videotape also shows Dawson moving his
head, not just his eyes, during the horizontal gaze nystagmus test.

Dawson argues that the
evidence is factually insufficient to prove that he was intoxicated because no
one testified that they saw him drinking and Officer Sain did not state that
Dawson smelled of alcohol in his police report. 
Dawson also claims that although there is some evidence to support his
conviction, there is more evidence to support his argument that he was not
intoxicated.

However, contrary to Dawson=s assertion, our review of the record shows ample evidence that Dawson
was intoxicated.  First, although Dawson
argues that the evidence was insufficient because no one testified that they
saw him drinking, Dawson admitted to Officer Ubinger that he had been drinking.
Additionally, both Officer Sain and Officer Ubinger testified that Dawson
smelled of alcohol.  There was also
evidence presented that Dawson had slurred speech, glassy eyes, and that he was
unable to keep his balance.

The evidence supporting the
conviction is not so weak, nor the contrary evidence so overwhelming, that the
jury=s verdict is clearly wrong or manifestly unjust.  Watson, 204 S.W.3d at 414B15, 417.  Therefore, we hold
that the evidence is factually sufficient to support the jury=s finding that Dawson was intoxicated. 
Accordingly, we overrule Dawson=s second point.

 








 

V.  Restitution

In his final point, Dawson
claims that the trial court erred by granting restitution to Major because
there was no factual basis in the record to support the restitution award.

We review challenges to
restitution orders under an abuse of discretion standard.  Campbell v. State, 5 S.W.3d 693, 696
(Tex. Crim. App. 1999).  An abuse of
discretion occurs if the trial court acts without reference to any guiding
rules or principles or acts arbitrarily or unreasonably.  Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990).  

Article 42.037(a) of the
Texas Code of Criminal Procedure provides that 
Athe court that sentences a defendant convicted of an offense may order
the defendant to make restitution to any victim of the offense or to the
compensation to victims of crime fund. . . .@  TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (Vernon Supp. 2007).  If the offense results in damage, loss, or
destruction of a victim=s property,
the trial court may order the defendant to return the property or if the return
of the property is impossible, to pay the victim the value of the
property.  Id. art.
42.037(b)(1).  








Texas law provides three
limits on the amount of restitution a trial court can order.  See Campbell, 5 S.W.3d at 696.  The amount must be just and supported by a
factual basis within the loss of the victim. 
Id.  The restitution
ordered must also be for an offense for which the convicted person is
criminally responsible.  Id. at
697; Gordon v. State, 707 S.W.2d 626, 629 (Tex. Crim. App. 1986).
Finally, restitution is proper only for the victim or victims of the offense
for which the offender is charged.  Campbell,
5 S.W.3d at 697; Martin v. State, 874 S.W.2d 674, 679B80 (Tex.  Crim. App. 1994). 

The State has the burden of
proving the amount of loss sustained by the victim of a crime by a
preponderance of the evidence for the purpose of factually supporting a
restitution order.  TEX. CODE CRIM. PROC. ANN. art. 42.037(k) (Vernon Supp. 2007). 








Here, there is no evidence in
the record to establish any amount of restitution.  The State points to Exhibit A attached to the
trial court=s judgment
to demonstrate that the restitution was just. 
However, Exhibit A merely states that Dawson owes Major $500 in
restitution, it does not state what the amount is based on.  Accordingly, because there is a complete
absence of factual basis in the record, we hold that any reference to
restitution should be deleted from the judgment.[5]  See Wallace v. State, 75 S.W.3d 576,
583 (Tex. App.CTexarkana
2002), aff=d, 106 S.W.3d 103 (Tex. Crim. App. 2003).  Thus, we sustain Dawson=s third point.

Accordingly, we modify the
trial court=s judgment
to delete any reference to restitution. 
TEX. R. APP. P. 43.2(b).

VI.  Conclusion

Having modified the trial
court=s judgment to delete the restitution order, we affirm the trial court=s judgment as modified.

 

PER CURIAM

PANEL F:  HOLMAN, LIVINGSTON,
and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
47.2(b)

DELIVERED:  July 10, 2008











[1]See Tex. R.
App. P. 47.4.





[2]Profitt originally stated that she
saw Dawson slashing the tires between 10:00 a.m. and 11:00 a.m., but then later
stated that the police officers arrived around 1:00 p.m.

 





[3]Officer
Clapp located another knife in the passenger seat of Dawson=s
car.





[4]Officer Sain stated that he did not
put in his police report that he smelled alcohol on Dawson because he did not
perform the field sobriety tests.





[5]Although Dawson only appealed the
restitution order on the basis that it was not supported by the record, we
further observe that the restitution was not for the offense for which Dawson
was charged, i.e., DWI.  See Campbell,
5 S.W.3d at 696B97.