**Affirmed in Part; Reversed and Rendered in Part and Opinion filed June 30, 2015.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-14-00306-CR**
**NO. 14-14-00307-CR**
**NO. 14-14-00308-CR**
**NO. 14-14-00309-CR**
**NO. 14-14-00310-CR**

---

**ERIC L. BAUMGART, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 6**
**Harris County, Texas**
**Trial Court Cause Nos. 1909495, 1909496, 1909497, 1909498, and 1909499**

---

## O P I N I O N

A jury convicted appellant Eric L. Baumgart of five counts of violating the Private Security Act. *See* Tex. Occ. Code Ann. §§ 1702.102 & 1702.108 (West 2012 & Supp. 2014). For each offense, the trial court assessed punishment at

confinement for one year in the Harris County Jail, probated for two years. Appellant filed a timely notice of appeal in each case. We affirm in part and reverse and render in part.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issue, appellant claims the evidence is legally insufficient to support his conviction in trial court cause number 1909495 on two grounds. The record reflects this offense arose from appellant acting as a guard for a construction zone on US 59. The first ground regards the allegation that appellant acted as a guard on a contractual basis for Alejandro Lopez. The second ground concerns the allegation that appellant acted as a guard on private property.[1]

In this case, the indictment alleged appellant "did then and there unlawfully, intentionally or knowingly act as a guard company by engaging in the business of a guard on a contractual basis for another person, namely ALEJANDRO LOPEZ to prevent, observe or detect unauthorized activity on private property, without holding a license as a security services contractor." Appellant's first issue contends there is no evidence that he engaged in the business of a guard on a contractual

---

[1]"A person acts as a guard company for the purposes of this chapter if the person employs an individual described by Section 1702.323(d) or engages in the business of or undertakes to provide a private watchman, guard, or street patrol service on a contractual basis for another person to:

(1) prevent entry, larceny, vandalism, abuse, fire, or trespass on private property;

(2) prevent, observe, or detect unauthorized activity on private property;

(3) control, regulate, or direct the movement of the public, whether by vehicle or otherwise, only to the extent and for the time directly and specifically required to ensure the protection of property;

(4) protect an individual from bodily harm including through the use of a personal protection officer; or

(5) perform a function similar to a function listed in this section."

Tex. Occ. Code Ann. § 1702.108 (West 2012).

basis for Alejandro Lopez. Appellant's second issue argues there is no evidence he acted as a guard on private property. We begin with appellant's second issue.

Evidence was introduced that Alejandro Lopez was supervising the construction crew doing repairs on a bridge on US 59. Lopez worked for Main Lane Industries, a subcontractor for the Texas Department of Transportation ("TxDot"). Lopez testified the portion of US 59 that was under repair is not private property. He also testified the public did not have access to the part of the highway being repaired. Deputy John E. Clay of the Harris County Sheriff's Office testified the public did not have access to that area of the road because it was "marked off" with barrels but stated it is "public roadway" and agreed it is not private property. Investigator Kirk Bonsal with the District Attorney's Office also testified the public was not able to access the part of the road within the traffic cones. Adam Galland, the Assistant Area Engineer at the North Harris County Area Office for TxDot, testified lanes are closed to "keep the public out."

The State argues that since the area in question was cordoned-off with barrels and a security guard was present to keep the public out, that section of the roadway was a private area. The State asserts that if an area falls outside the definition of "public place" in the Texas Penal Code, it is private property. *See* Tex. Pen. Code Ann. § 1.07(a)(40) (West Supp. 2014). Although the definition of "public place" expressly includes highways, the State argues it was private because it was not accessible to the public. The State cites two cases in support of its argument. In *State v. Gerstenkorn*, 239 S.W.3d 357, 359 (Tex. App.—San Antonio 2007, no pet.), the court concluded a gated community was a public place as defined by the penal code.

> The penal code defines "public place" as any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools,

3

hospitals, apartment houses, office buildings, transport facilities, and shops. Tex. Pen. Code Ann. § 1.07(a)(40) (Vernon Supp. 2006). The definition of public place is cast in broad language. *Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.); *State v. Nailor*, 949 S.W.2d 357, 359 (Tex. App.—San Antonio 1997, no pet.). The relevant inquiry is whether the public has access to the place. *Shaub*, 99 S.W.3d at 256; *Loera v. State*, 14 S.W.3d 464, 467–68 (Tex. App.—Dallas 2000, no pet.). The definition of public place is open–ended and leaves discretion to the courts to expand its parameters where appropriate. *Loera*, 14 S.W.3d at 467.

*Id*. at 358-59. In *Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.), the court similarly concluded a marina was a public place noting "the entire marina area appears to be accessible to anyone who wants to use it."

These cases are illustrative of what is a public place but we disagree that any area that is temporarily closed off within a public place becomes private property. The penal code expressly states a public place includes highways and there is no limitation in the statute for a partial and temporary closure. The State cites no authority, and we are aware of none, supporting its premise that a public place is converted into private property when a portion of it is temporarily closed to public access.

Because the alleged offense did not occur on private property, a rational trier of fact could not have found all the elements of the offense beyond a reasonable doubt. Accordingly, appellant's second issue is sustained and the judgment of the trial court in trial court cause number 1909495 is reversed and a judgment of acquittal is entered. In light of this, we need not address appellant's first issue.

4

In his third issue, appellant claims the trial court erred in denying his motions to quash the indictments on the grounds the State failed to negate an exception to the charged offense. In light of our disposition of appellant's second issue, we only consider this issue as to the remaining offenses.[2]

The prosecuting attorney must negate the existence of an exception in the indictment of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception. *See* Tex. Pen. Code. Ann. § 2.02 (West 2011). Generally, where a penal statute embraces an exception which is part of the statute itself, the State must negate the exception in the charging instrument. *McElroy v. State,* 720 S.W.2d 490, 493 (Tex. Crim. App. 1986). *See also Hicks v. State*, 18 S.W.3d 743, 744 (Tex. App.—San Antonio 2000, no pet.). This rule applies to penal statutes included in the civil statutes as well as exceptions to criminal conduct in the penal code. *McElroy v. State*, 720 S.W.2d at 492. Failing to negate an exception is the same as failing to allege an essential element of the offense and renders the indictment void. *Id.*

"Where an exception is in a separate section from the provision that states the offense and a prima facie case can be made without proof negating the exception, it is not an essential requirement that it be negated in the information or complaint." *McClain v. State*, 14-97-00355-CR, 1997 WL 312309, at *1-2 (Tex. App.—Houston [14th Dist.] June 12, 1997, pet. ref'd) (mem. op.) (not designated for publication) (citing *American Plant Food Corp. v. State*, 508 S.W.2d 598, 604-05 (Tex. Crim. App. 1974); and *Bragg v. State*, 740 S.W.2d 574, 576 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd)). The exception for law enforcement personnel

---

[2] These offenses all arose from appellant's work as a security guard for Humble Bingo Unit Trust.

is in a separate section from the provision stating the offense — "Subchapter N. Exceptions" of "Chapter 1702. Private Security." *See* Tex. Occ. Code Ann. § 1702.322 (West 2012 & Supp. 2014). A prima facie case of acting as a security services contractor without a license can be made without proof negating the exception. *See id.* Therefore, the State was not required to negate the exception in the indictments and the trial court did not err in denying the motions to quash. Appellant's third issue is overruled.

## ERROR IN THE COURT'S CHARGE

Appellant's fourth and final issue contends there was error in the court's charge. In light of our disposition of appellant's second issue, we only consider this issue as to the remaining offenses.

Appellant argues the trial court erred in failing to apply the law regarding law enforcement personnel to the facts of the case, *see* Tex. Occ. Code Ann. § 1702.322, and in failing to instruct the jury that a reasonable doubt on the issue required acquittal. Appellant's initial arguments are premised upon this court first finding section 1702.322 is a defensive issue, not an exception. As noted above, section 1702.322 is an exception to the offense. Appellant later asserts that regardless of whether section 1702.322 is an exception or a defense, the trial court was obligated to include an application paragraph in connection with that section. We will consider whether the trial court erred in not applying the law regarding the law enforcement exception to the facts of the case in the charge given to the jury.

The abstract portion of the jury charge defines the charged offense as follows:

> It is unlawful for any person to engage in the business of, or to perform any service as a guard company, or to offer his services in such capacities or engage in any

business or business activity required to be licensed by the Texas Private Security Act, unless the person holds a license as a security services contractor.

The abstract portion of the charge also provides a description of section 1702.322's law enforcement personnel provision:

It is not a violation of the Private Security Act for a person who has full-time employment as a peace officer, to receive compensation for private employment on an individual or independent contractor basis as a guard, if the officer:

(A) is employed in an employee-employer relationship or is employed on an individual contractual basis;

(B) is not in the employ of another peace officer;

(C) is not a reserve officer; and

(D) works as a peace officer on average at least 32 hours a week, is compensated by the state or political subdivision of the state at the rate of minimum wage or higher, and is entitled to all employee benefits offered to a peace officer by the state or political subdivision.

Following the abstract section of the jury charge, the application paragraph states:

Now, therefore, if you believe from the evidence beyond a reasonable doubt that…the defendant, ERIC L. BAUMGART, did then and there unlawfully, intentionally or knowingly act as a guard company by engaging in the business of a guard on a contractual basis for another person…to prevent, observe or detect unauthorized activity on private property, without holding a license as a security services contractor, then you shall find the defendant guilty.

7

The charge further instructed the jurors that:

> The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.
>
> . . .
>
> The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

An application paragraph encompassing the exception could have read as follows:

> Now, therefore, if you believe from the evidence beyond a reasonable doubt that on or about November 17, 2012, the defendant, ERIC BAUMGART, did then and there unlawfully, intentionally, or knowingly act as a guard company by engaging in the business of a guard on a contractual basis for another person to prevent observe or detect unauthorized activity on private property, without holding a license as a security services contractor, and further find beyond a reasonable doubt that: the defendant did not work as a peace officer on the average of at least 32 hours a week or; that the defendant was not compensated by the state or a political subdivision of the state at the rate of the minimum wage or higher or; that the defendant was not entitled to all employee benefits offered to a peace officer by the state or a political subdivision, then you shall find the defendant guilty.

We can find no authority, nor have the parties cited any authority, that stands for the proposition that the failure to include an application paragraph regarding a statutory exception to an offense is error. We will assume without deciding that

8

there was in fact error. At the outset, we note that there was no objection to the court's charge. Therefore, any harm must be egregious to require reversal. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). An egregious harm analysis considers: (1) the entire jury charge; (2) the state of the evidence including the contested issues and the weight of the probative evidence; (3) the arguments of the parties; and (4) any other relevant information revealed by the record of the trial as a whole. *Id*. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id*. Egregious harm is a difficult standard to prove. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

Regarding the initial factor, a review of the entire jury charge indicates any error did not result in egregious harm. The "law enforcement personnel" issue was not presented in the application paragraph. However, it was explained in detail in the abstract section of the jury charge. A proper recitation of the law in the abstract section of the charge minimizes error in the application paragraph. *Nava v. State*, 415 S.W.3d 289, 298 n.21 (Tex. Crim. App. 2013).

The application paragraph contained in the charge instructed jurors to find appellant guilty only if he "unlawfully" acted as a guard without a license. The jury was required to find appellant was not a law enforcement officer before finding him guilty of the offense. A review of the entire charge indicates appellant was not egregiously harmed by any error.

The second factor looks at the state of the evidence. In determining whether egregious harm occurred with regard to an error relating to an exception, we must consider the plausibility of the evidence raising the exception. *Villarreal v. State*, 453 S.W.3d 429, 436 (Tex. Crim. App. 2015). We conclude the evidence negating the exceptions for law enforcement personnel was strong.

To negate an exception under this statute, the State was required to prove that appellant: (1) did not work as a peace officer at least 32 hours per week on average; (2) was not compensated by a rate equal to minimum wage at least; and (3) was not entitled to all employee benefits offered to a peace officer. Tex. Occ. Code Ann. § 1702.322(1) (West 2012). Chad Pafford[3] testified on behalf of appellant that he worked more than 32 hours per week on average. However, on cross examination by the State, Pafford admitted there was no documentation to support this claim. Pafford stated that appellant worked on "the honor system." The Liberty County Treasurer, Kim Harris, testified on behalf of the State that appellant was never a paid employee of Liberty County.

As to the minimum-wage requirement, Pafford stated that appellant never received a paycheck while working as a full-time officer for nearly two years. Pafford testified that appellant's sole compensation was the use of a "take-home patrol car" and the use of unspecified "county equipment." Pafford considered the value of the use of these items to be more than minimum wage. The car was a 2000 Ford Crown Victoria with approximately 260,000 miles. Pafford did not report this "compensation" to the Liberty County Tax Assessor, the IRS, or any other taxing authority.

With regard to the benefits requirement, Harris stated that county employees, including law enforcement personnel, are offered various county benefits. Her office maintains files for workmen's compensation benefits for all county employees. There was no record of appellant receiving any benefits.

On the whole, the State's evidence regarding the exception for law enforcement personnel was strong. First, there was no documentation to support that appellant worked 32 hours per week on average. Furthermore, Pafford's

---

[3] Pafford was the elected constable who gave appellant a job.

reliance on "the honor system" reflects that he did not verify appellant's work hours. The record demonstrates that Pafford did not have actual knowledge of the amount of hours worked by appellant.

Next, there is no evidence that appellant was paid at least minimum wage. Appellant received no pay at all. The record reflects no evidence was presented regarding what minimum wage was at the time of the offense or the value of appellant's use of the county car and other county equipment.

As to the next requirement, Pafford testified on cross examination by the State that he did not know if appellant was entitled to all the benefits offered by Liberty County. Pafford's belief that appellant was entitled to receive workmen's compensation benefits was contradicted by Harris and her knowledge of the Liberty County personnel files.

Given the overall state of the evidence, it is highly unlikely the jury could have found that the State failed to negate any of the exceptions under the law enforcement personnel exception to the statute. Additionally, the State brought forth evidence that appellant was not a full-time officer (as required under section 1702.322). At the time of his arrest at the Lopez construction site, he possessed an unexpired identification card that identified him as a *reserve* officer for the Liberty County Constable. The state of the evidence demonstrates that any possible error relating to the omission of the exception for law enforcement personnel in the application paragraph of the charge did not result in egregious harm.

We must also consider whether egregious harm occurred as a result of jury charge error in light of the parties' arguments. The record reflects that both parties addressed the exception for law enforcement personnel and applied that statutory law to the facts of the case. Appellant argued that the State failed to

11

prove that he was not a full-time police officer. The State argued in closing that they had proved that he was a reserve officer and alternatively that he did not meet the three requirements. From the arguments the jury would have understood that the burden was on the State to negate the exception. Therefore, the record clearly demonstrates that the jury received information applying the law to the facts despite any error in the jury charge's application paragraph. Given the foregoing analysis, we conclude the error, if any, did not cause appellant egregious harm. Accordingly, we overrule appellant's fourth issue.

## CONCLUSION

For the reasons set forth above, we reverse the judgment of conviction in trial court cause number 1909495 and render a judgment of acquittal. The judgments in trial court cause numbers 1909496, 1909497, 1909498, and 1909499 are affirmed.


/s/     Marc W. Brown
Justice


Panel consists of Justices Christopher, Brown, and Wise.
Publish — Tex. R. App. P. 47.2(b).

12