COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| THOMAS HEARREAN, | | No. 08-13-00338-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | County Criminal Court No. 5 |
| | § | |
| THE STATE OF TEXAS, | | of Denton County, Texas |
| | § | |
| Appellee. | | (TC# F-2012-1033-E) |
| | § | |

## **O P I N I O N**

Thomas Hearrean appeals his conviction of felony driving while intoxicated. A jury found Appellant guilty, found the enhancement paragraphs true, and assessed his punishment at imprisonment for a term of thirteen years and one day. We affirm.

### FACTUAL SUMMARY

A taxi driver, Brian Pilgrim, picked up Appellant from a bar in Grapevine and took him to a marina in Flower Mound where he had left his vehicle. Appellant explained that he had been out with friends and did not have a ride back to his vehicle. He also told Pilgrim that he would get money from his vehicle to pay for the ride. When they arrived at the marina located inside of Murrell Park, Pilgrim was not able to enter because the gate was closed. Appellant told Pilgrim he could not pay the fare and to call the police. He jumped over the fence and began running toward a restaurant, Little Pete's. Consequently, Pilgrim called 911, and Officer Mark

Loser of the Flower Mound Police Department was dispatched to the entrance of Murrell Park regarding the theft of service call.

After speaking with Pilgrim, Loser and other officers drove through Murrell Park looking for Appellant. Loser returned to Little Pete's and spoke with two bartenders in an effort to locate Appellant. They had not seen anyone matching his description, but they directed Loser's attention to an unfamiliar truck in the parking lot. He ran the license plate and determined that the truck was registered to Appellant. Shortly after Loser left the parking lot to speak with the taxi driver again, he received a call notifying him that Appellant's truck was exiting the parking lot with the headlights off. Loser drove to a nearby trail and soon saw a truck drive by with no headlights. He pulled behind the truck and turned on his emergency lights and spotlight, but the driver, subsequently identified as Appellant, turned on the headlights and sped around a curve. When Loser caught up to the truck, he saw that Appellant had stopped in a grassy area. Appellant extended his left arm out of the driver's side window and threw the keys into the woods before he exited the truck. Loser made Appellant get on the ground and he handcuffed him for purposes of officer safety. Appellant told Loser that he was driving with his headlights off because his license was suspended from a prior DWI and he was trying to get out of the park without being found by the police. He admitted that he had been drinking but claimed he had only had two beers. Loser noticed that Appellant had a strong odor of alcohol on his breath, his eyes were bloodshot, and his speech was slurred. Loser removed the handcuffs and performed the horizontal gaze nystagmus test on Appellant. The officer found that Appellant showed six of six possible clues which indicated intoxication. He then had Appellant perform the walk-and-

turn test. Appellant showed six of eight possible clues on that test. Appellant could not perform the one-legged stand test due to an injury to his leg from a motorcycle accident, so the officer asked him to perform some other tests. Appellant failed to recite the alphabet in the correct order, but he was able to count backwards from 54 to 36. Loser placed Appellant under arrest for driving while intoxicated.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant challenges the legal sufficiency of the evidence supporting his conviction. More specifically, he argues that the evidence is insufficient to prove that he operated a motor vehicle in a public place.

### Standard of Review

Sufficiency of the evidence to support a criminal conviction is governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010), *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Because the jury is the sole judge of the weight and credibility of the evidence, we must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). Further, we are not permitted to reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Our task is to determine whether,

based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

When conducting a sufficiency review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004).

*Public Place Element*

A person commits the offense of driving while intoxicated if he operates a motor vehicle in a public place while intoxicated. TEX.PENAL CODE ANN. § 49.04(a)(West Supp. 2015). The Texas Penal Code defines "public place" as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops. TEX.PENAL CODE ANN. § 1.07(a)(40)(West 2015). This definition is set forth in broad language. *State v. Gerstenkorn*, 239 S.W.3d 357, 358-59 (Tex.App.--San Antonio 2007, no pet.); *Shaub v. State*, 99 S.W.3d 253, 256 (Tex.App.--Fort Worth 2003, no pet.); *State v. Nailor*, 949 S.W.2d

- 4 -

357, 359 (Tex.App.--San Antonio 1997, no writ). The relevant inquiry is whether the public has access to the premises in question. *Perry v. State*, 991 S.W.2d 50, 52 (Tex.App.--Fort Worth 1998, pet. ref'd). In the context of a sufficiency review, the question is whether a rational trier of fact could find beyond a reasonable doubt that the public had access to Murrell Park at the time Appellant drove on the park road.

Murrell Park contains Little Pete's Restaurant, Twin Coves Marina, camping spots, and walking/biking trails. The park has a gated entrance which is closed from 10:00 p.m. to 6:00 a.m. Park visitors are not required to leave at 10:00 p.m., but visitors may leave after hours by simply pulling up to the gate which automatically opens when a sensor is triggered. Little Pete's Restaurant is open until midnight, and patrons wishing to go to the restaurant after 10:00 p.m. gain access to the park by pulling up to the gate and contacting someone at Little Pete's to open the gate remotely. Approximately 200 people own boats at the marina and they have access to the park and marina twenty-four hours a day by access cards. The public may also enter on foot or by bicycle on ungated trails. The park is popular with mountain bikers who sometimes ride at night using headlights.

Appellant argues that the public does not have access to the park after 10:00 p.m. because it is closed and the entrance is restricted by a locked gate. The Fort Worth Court of Appeals has considered whether a closed park is a "public place" in a DWI prosecution. *Perry*, 991 S.W.2d at 51-2. The court held that evidence showing the park was closed and the public was not "supposed" to use the park is irrelevant to the determination of whether the public has access to the park. *Id.* The court concluded that the evidence was sufficient to prove the public had access

to the park because there were no gates or other barriers to the entrance. *Perry*, 991 S.W.2d at 52.

Appellant maintains that *Perry* is distinguishable because the evidence here showed that entrance to the park is restricted by the locked gate. This argument focuses exclusively on the evidence showing that the gated street entrance to the park is restricted after closing time, but it does not consider whether the public nevertheless had access to the park. While the evidence shows that vehicular entrance to the park is restricted after closing time, any member of the public wishing to enter for the purpose of going to the restaurant can gain entrance through the locked gate. Additionally, members of the marina can enter using access cards at any time. There is also evidence that any member of the public can enter the park on foot or by bicycle and the public is not required to leave the park at closing time. Members of the public inside of the park after 10:00 p.m. can drive out of the park by using the unlocked gate. When taken in the light most favorable to the verdict, the evidence shows that the public, or a substantial group of the public, has access to the park even after it is closed. Consequently, a rational trier of fact could reasonably find beyond a reasonable doubt that the park is a public place. *See State v. Gerstenkorn*, 239 S.W.3d at 358-59 (gated community was a "public place" even though the community had a security guard and limited access where evidence showed that anyone could gain access to the community under the right circumstances); *Perry*, 991 S.W.2d at 52 (closed park was a "public place"); *Woodruff v. State*, 899 S.W.2d 443, 444-45 (Tex.App.--Austin 1995, pet. ref'd)(Air Force base was a "public place" even though the base was fenced and only access was through guarded gates). Issue One is overruled.

**PROBABLE CAUSE**

In his second issue, Appellant contends that the trial court abused its discretion by failing to suppress the evidence related to the blood alcohol test because the arresting officer lacked probable cause to believe Appellant had driven in a "public place."

*Standard of Review*

We review a trial court's ruling on a motion to suppress for abuse of discretion, giving almost total deference to a trial court's determination of historical facts and reviewing *de novo* the trial court's application of the law to the facts. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex.Crim.App. 2011); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010). Probable cause to make a warrantless arrest exists if the facts and circumstances within the officer's knowledge at the time of the arrest are sufficient to warrant a prudent man to believe that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex.Crim.App. 2009), *citing Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The test for determining probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer and requiring a consideration of the totality of the circumstances. *Amador*, 275 S.W.3d at 878, *citing Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003). A finding of probable cause requires "more than bare suspicion" but "less than . . . would justify . . . conviction." *Amador*, 275 S.W.3d at 878, *quoting Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Under the totality of the circumstances, the arresting officer had more than a mere suspicion that the park was a public place where the evidence showed that the public has access

to the park even after it has closed. *See Quinones v. State*, 325 S.W.3d 801, 803 (Tex.App.--Amarillo 2010, no pet.)(officer had probable cause to arrest defendant for consuming alcohol during prohibited hours[1] because the officer reasonably believed that the club was a "public place"); *see also Gerstenkorn*, 239 S.W.3d at 358-59 (gated community was a "public place" even though the community had a security guard and limited access where evidence showed that anyone could gain access to the community under the right circumstances); *Perry*, 991 S.W.2d at 52 (closed park was a "public place"); *Woodruff*, 899 S.W.2d at 444-45 (Air Force base was a "public place" even though the base was fenced and only access was through guarded gates). Issue Two is overruled.

## CONSENT

In Issue Three, Appellant argues that the trial court abused its discretion by denying his motion to suppress the blood test evidence because he did not voluntarily consent. Appellant maintains that he was coerced to consent by the officer's extra-statutory statement that a mandatory blood test would be performed even if Appellant refused.

*Applicable Law and Standard of Review*

A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement. *Fienen v. State*, 390 S.W.3d 328, 333 (Tex.Crim.App. 2012); *Meekins v. State*, 340 S.W.3d 454, 458-59 (Tex.Crim.App. 2011). The issue is whether the person's "will has been overborne and his capacity for self-determination critically impaired" such that his consent to search must have

---

[1] Consumption of alcohol is prohibited at specified times at both standard-hours and extended-hours establishments. *See* TEX.ALCO.BEV. CODE ANN. § 105.06(b), (c)(West Supp. 2015).

- 8 -

been involuntary.  *Fienen*, 390 S.W.3d at 333, *quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).  The reviewing court must examine the totality of the circumstances of the interaction between the police and citizen from the view point of the objectively reasonable person.  *Fienen*, 390 S.W.3d at 333. The State is required to prove voluntary consent by clear and convincing evidence.  *Fienen*, 390 S.W.3d at 333; *State v. Weaver*, 349 S.W.3d 521, 526 (Tex.Crim.App. 2011).

The parties disagree regarding the standard of review.  Appellant asserts that the question whether Appellant's consent was coerced in a pure question of law subject to *de novo* review while the State maintains that we must review the finding of consent for an abuse of discretion. Issues of consent are inherently fact intensive.  *Meekins*, 340 S.W.3d at 460.  Consequently, a reviewing court must accept a trial court's finding of voluntariness unless it is clearly erroneous. *Id.*  On appeal, "the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence."  *Meekins,* 340 S.W.3d at 460, *quoting State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008). When the trial court does not make written findings of fact, as in this case, we imply findings of fact that support the ruling so long as the evidence supports those implied findings.  *Meekins*, 340 S.W.3d at 460.  Accordingly, we will not reverse the trial court's ruling unless an abuse of discretion is shown. *See Fienen*, 390 S.W.3d at 335; *Meekins*, 340 S.W.3d at 464.

*Analysis*

During the arresting officer's trial testimony, defense counsel moved to suppress all evidence related to the blood alcohol test on the ground that Appellant did not voluntarily

consent to the blood draw. The trial court conducted a hearing outside of the jury's presence to determine whether Appellant's consent was voluntary. The arresting officer, Mark Loser, asked Appellant for a specimen of his blood after reading the DIC-24 warnings to him. Appellant did not refuse and instead responded by asking the officer for advice on what he should do. Officer Loser informed Appellant that he could get a mandatory blood draw if Appellant refused. Appellant then consented to provide a specimen of his blood for testing. Loser asked Appellant if he would rather do the breath test instead, but Appellant refused, stating that he did not believe he was intoxicated and he wanted to give blood. In addition to asking for some water, Appellant asked the officer to take as long as possible to get him to the hospital for the blood draw. Appellant did not withdraw his consent or otherwise express any reservations about doing the blood test. The trial court found that there was "clear and convincing evidence that [Appellant] made a conscious and voluntary decision to consent to having his blood tested."

It is undisputed that the arresting officer told Appellant that a blood specimen would be taken even if Appellant refused to consent, but this statement must be analyzed under the totality of the circumstances. *See Fienen*, 390 S.W.3d at 335. Officer Loser read the DIC-24 to Appellant without making any additional statements. It was only when Appellant asked for the officer's opinion about what he should do that Loser told Appellant about the mandatory blood draw. Officer Loser made the statement in question based on Section 724.012(b)(3) of the Texas Transportation Code because he had information that Appellant had two prior DWI convictions. *See* TEX.TRANSP.CODE ANN. § 724.012(b)(3)(B)(West 2011)(providing that a peace officer shall require the taking of a specimen of the breath or blood if the person refuses the officer's request

- 10 -

to submit to the taking of a specimen voluntarily and at the time of the arrest the officer possesses or receives reliable information from a credible source that the person has two or more prior convictions for driving while intoxicated).

Appellant argues that Officer Loser's statement was untrue because the United States Supreme Court held in *Missouri v. McNeely*[2] that, absent exigent circumstances, a blood specimen cannot be obtained from a DWI suspect without a warrant or consent. At the time of Appellant's arrest (August 15, 2011), *Missouri v. McNeely* had not been decided. Consequently, the officer's statement was true at the time it was made. Further, the exchange with Appellant about his decision to consent was not prolonged. There is also evidence in the record that would permit the trial court to draw an inference that Appellant voluntarily consented to a blood test because he did not believe he was intoxicated and he also hoped that his blood alcohol would be dissipated by the time his blood was drawn. Under the totality of the circumstances, there is clear and convincing evidence that Appellant made a conscious and voluntary decision to consent to the blood test. *See Fienen*, 390 S.W.3d at 336. Finding no abuse of discretion, we overrule Issue Three.

## VOLUNTARY STATEMENTS

In Issue Four, Appellant asserts that the trial court erred by failing to suppress his statements made on the roadside because he was not given his *Miranda*[3] warnings. The State responds that Appellant was not in custody at the time he made the statements, and therefore, *Miranda* does not apply.

---

[2] *Missouri v. McNeely*, 569 U.S. ---, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Standard of Review*

In reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review: it affords almost total deference to the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex.Crim.App. 2012). A trial court's ultimate "custody" determination presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007). If credibility and demeanor are not necessary to the resolution of an issue, whether a set of historical facts constitutes custodial interrogation under the Fifth Amendment is subject to *de novo* review because that is an issue of law: it requires application of legal principles to a specific set of facts. *Alford*, 358 S.W.3d at 653.

*Custody*

A person is "in custody" for purposes of *Miranda* if under the totality of the circumstances a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322–24, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). An appellate court determines custody based on objective circumstances, and any subjective intent of law enforcement officers to arrest is irrelevant unless that intent is communicated or otherwise manifested to the suspect. *Stansbury*, 511 U.S. at 325–26, 114 S.Ct. at 1530. In evaluating whether a reasonable person would believe his freedom has been

restrained to the degree of a formal arrest, we are to look only to the objective facts surrounding the detention. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex.Crim.App. 2012). We do not consider the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529. The subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Dowthitt*, 931 S.W.2d at 254, *citing Stansbury*, 511 U.S. at 324-25, 114 S.Ct. at 1530. Any undisclosed subjective belief of the suspect that he is guilty of an offense should not be taken into consideration--the reasonable person standard presupposes an innocent person. *Ortiz*, 382 S.W.3d at 373; *see Dowthitt*, 931 S.W.2d at 254, *citing Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991).

The evidence at trial established that Officer Loser was attempting to locate a man in connection with a theft of services call. Restaurant employees pointed out an unknown truck in the parking lot and Loser determined that it was registered to Appellant. After unsuccessfully searching the area, Loser gave his phone number to one of the restaurant employees and left the parking lot. Within a short period of time, the restaurant employee called him and said that the truck had exited the parking lot with its headlights off. Loser waited on a nearby road and soon saw a truck drive by without its lights. Loser activated his emergency lights and spotlight and pulled behind the vehicle. Appellant responded by turning on his headlights and speeding around a curve in what appeared to be an effort to get away from the officer. When Loser came around the curve, he saw that Appellant had pulled over in a grassy area. Appellant then extended his left arm out of the driver's window, threw his keys into the heavily-wooded area,

- 13 -

and exited his truck. Surprised by Appellant's actions, Loser was unsure what Appellant intended to do, so he exited his vehicle with his weapon drawn, but did not approach Appellant, and he ordered Appellant to get back inside of his truck. Loser explained that the area was pitch black, he was working alone, and he was unsure whether Appellant had a weapon or intended to run. Loser quickly realized he could not see Appellant, so he ordered him to exit the vehicle and lay face-down on the ground. Fearing for his safety and still unsure whether Appellant intended to run, Loser placed hand-cuffs on Appellant.

Loser asked Appellant a few questions beginning with his identity. After learning Appellant's name, Loser asked Appellant why he was driving without his headlights. Appellant responded that his license was suspended due to a DWI and he was attempting to get out of the park without being detected. Loser then made the observation to Appellant that he probably threw his keys into the woods because he was drunk. Appellant initially agreed, but immediately said he was not drunk and he had consumed only a couple of beers. Finally, Loser asked Appellant what he was doing in the park. Appellant explained that his girlfriend had dropped him off at Little Pete's and he had spent the day with friends on a boat on Lake Grapevine. Appellant told Loser he had a couple of beers and a mixed drink. Loser removed the handcuffs after speaking with Appellant for approximately ten minutes. Loser placed Appellant under arrest for DWI after conducting the field sobriety tests.

The record supports a conclusion that the encounter between Officer Loser and Appellant began as an investigative detention because Loser was investigating the theft of services call when he saw Appellant driving a vehicle after midnight without any lights. While the officer

had his weapon drawn when he ordered Appellant to exit his vehicle and get on the ground, and he handcuffed Appellant for several minutes at the beginning of the encounter, these facts do not necessarily mean that Appellant was in custody for purposes of *Miranda*. An officer may, during an investigative detention, employ the force necessary to effect the reasonable goals of the detention: investigation, maintenance of the status quo, and officer safety. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997); *Martinez v. State*, 304 S.W.3d 642, 652 (Tex.App.--Amarillo 2010, pet. ref'd). This force may include the officer approaching a vehicle with his service weapon drawn and ordering a person to exit his vehicle and lie down on the ground pending completion of the stop. *See Rhodes*, 945 S.W.2d at 118; *Marsh v. State*, 684 S.W.2d 676, 679 (Tex.Crim.App. 1984); *Martinez*, 304 S.W.3d at 653. Further, the use of handcuffs does not transform an investigative detention into an arrest when they are necessary to maintain the status quo or the officer is reasonably concerned for his safety. *See State v. Sheppard*, 271 S.W.3d 281, 286 (Tex.Crim.App. 2008); *Martinez*, 304 S.W.3d at 653; *see also Balentine v. State*, 71 S.W.3d 763, 771 (Tex.Crim.App. 2002)(stating that there is no bright-line test providing that handcuffing is always the equivalent of an arrest).

The evidence established that Officer Loser approached the vehicle with his weapon drawn, ordered Appellant to exit the vehicle and lie down on the ground, and handcuffed Appellant in order to maintain the status quo and because he reasonably feared for his safety. We conclude that Appellant was not in custody when he made the statements in question, and therefore, no *Miranda* violation occurred. Issue Four is overruled.

**ARTICLE 38.23**

- 15 -

In Issues Five and Six, Appellant argues that the trial court erred by refusing to include in the charge an Article 38.23 instruction related to the claimed *Miranda* violation (Issue Five) and illegal arrest due to the absence of probable cause to believe Appellant had operated a vehicle in a public place (Issue Six). Article 38.23 prevents the use of any evidence against the accused that was obtained in violation of federal or state constitutions or laws. TEX.CODE CRIM.PROC. ANN. art. 38.23(a)(West 2005). To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct. *Hamal v. State*, 390 S.W.3d 302, 307 (Tex.Crim.App. 2012); *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex.Crim.App. 2008).

### *Miranda Violation*

We addressed the *Miranda* violation issue in Issue Four and concluded that Appellant was not in custody when he made the statements at issue. If statements are not made as a result of custodial interrogation, the requirements of *Miranda* do not apply. *Rodriguez v. State*, 191 S.W.3d 428, 448 (Tex.App.--Corpus Christi 2006, pet. ref'd).

Appellant cites *Reynolds v. State*, 848 S.W.2d 148 (Tex.Crim.App. 1993) in support of his argument that he was entitled to an Article 38.23 instruction on the custody issue. In that DWI case, a police officer initially stopped the defendant for speeding. *Reynolds*, 848 S.W.2d at 148. At trial, the evidence showed that the defendant told the officer he did not think he was driving "that fast" and the passenger affirmatively testified that the defendant was not speeding. *Id.* The trial court refused to include an Article 38.23 instruction in the charge related to the

- 16 -

legality of the stop. *Reynolds*, 848 S.W.2d at 149. The Court of Criminal Appeals held that the defendant was entitled to an Article 38.23 issue because the evidence was sufficient to raise a fact issue whether the defendant was speeding. *Id.* The instant case is distinguishable because the record does not reflect that there are any material factual disputes related to the custody determination. Consequently, Appellant was not entitled to an Article 38.23 instruction on this issue. *See State v. Waldrop*, 7 S.W.3d 836, 839 (Tex.App.--Austin 1999, no pet.). Issue Five is overruled.

*Probable Cause*

We addressed Appellant's probable cause argument in Issue Two and held that the officer had probable cause to believe that Murrell Park is a public place. Appellant has not identified any contested fact issues material to the probable cause determination and we have found none. Consequently, he was not entitled to an Article 38.23 instruction. *See Hamal*, 390 S.W.3d at 307 (defendant not entitled to Article 38.23 instruction on reasonable suspicion where there was no disputed material fact issue). Issue Six is overruled.

**ADMISSION OF RETROGRADE EXTRAPOLATION EVIDENCE**

In his final issue, Appellant argues that the trial court erred by admitting irrelevant expert retrograde extrapolation evidence. He asserts that the evidence is irrelevant because the expert witness testified "to a purely hypothetical extrapolation fact pattern." Appellant's argument is restricted to the relevance of the expert evidence. Consequently, we will not address the reliability of the retrograde extrapolation evidence.

*Applicable Law and Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex.Crim.App. 2012); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex.Crim.App. 2005). The trial court's ruling will be reversed only when it lies outside the zone of reasonable disagreement. *Hernandez*, 390 S.W.3d at 324; *Tillman v. State*, 354 S.W.3d 425, 435 (Tex.Crim.App. 2011).

Admission of expert testimony is governed by Rule 702 which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue.

TEX.R.EVID. 702. For expert testimony to be admissible, it must be sufficiently reliable and relevant to help the jury in reaching accurate results. *Tillman*, 354 S.W.3d at 345; *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992). Thus, the proponent of the evidence must demonstrate by clear and convincing evidence that (1) the testimony is based on a reliable scientific foundation, and (2) it is relevant to the issues in the case. *Tillman*, 354 S.W.3d at 435.

Rule 702's requirement that the evidence "assist the trier of fact to understand the evidence or to determine a fact in issue" is related primarily to relevance. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)(discussing Federal Rule of Evidence 702). Expert testimony that does not relate to a fact in issue is not helpful to the jury, and consequently, is not relevant. *Daubert*, 509 U.S. at 591, 113 S.Ct. at 2795; *Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Crim.App. 1996). Expert testimony is relevant when it is sufficiently tied to the facts of the case that it will aid the jury in

- 18 -

resolving a factual dispute. *Daubert*, 509 U.S. at 591, 113 S.Ct. at 2796; *Jordan*, 928 S.W.2d at 555. This condition is also referred to as the "fit" requirement. *See Daubert*, 509 U.S. at 591, 113 S.Ct. at 2796; *Jordan*, 928 S.W.2d at 555. The Court of Criminal Appeals observed in *Jordan* that "[r]elevance is by nature a looser notion than reliability." *Jordan*, 928 S.W.2d at 555. Further, the question whether evidence is sufficiently tied to the facts of the case is a simpler, more straight-forward matter to establish than whether the evidence is sufficiently grounded in science to be reliable. *Id.*

*The "Fit" Requirement*

"Retrograde extrapolation is the computation back in time of the blood-alcohol level— that is, the estimation of the level at the time of driving based on a test result from some later time." *Mata v. State*, 46 S.W.3d 902, 908-09 (Tex.Crim.App. 2001). Chris Youngkin, a forensic scientist, testified about Appellant's blood alcohol test results and retrograde extrapolation. Analysis of Appellant's blood specimen showed that his blood alcohol concentration was .15 grams of alcohol per 100 milliliters of blood. In the hypothetical question, the prosecutor asked Youngkin to assume that a male weighed 155 pounds, he had his first drink at 3:00 p.m., he was stopped by the officer at 11:30 p.m., the male's blood was drawn at 1:30 a.m., and the test result was .15. Youngkin testified that the hypothetical person's blood alcohol would have been approximately .19 at 11:30. He added that there was no scenario in which this person's BAC would have been below .08 at that time. We understand Appellant to argue that the retrograde extrapolation evidence is irrelevant under Rule 702 because the facts included in the hypothetical question do not match the facts established by the admitted evidence. "The use of hypothetical

- 19 -

questions in the examination of expert witnesses is a well-established practice." *Matson v. State*, 819 S.W.2d 839, 853 (Tex.Crim.App. 1991). The facts utilized by the hypothetical can be facts admitted into evidence or facts assumed by counsel in accordance with the theory of the case. *Matson*, 819 S.W.2d at 852. A hypothetical question and the expert's testimony satisfy the fit requirement if they take into account enough of the pertinent facts to be of assistance to the jury on a fact in issue. *See Tillman*, 354 S.W.3d at 438.

It is undisputed that Appellant is a male, his blood was drawn at 1:30 a.m., and the blood test showed that Appellant's BAC was .15. Documentary evidence admitted during the punishment phase reflects that Appellant weighed 157 pounds in 2004. Appellant admitted to Officer Loser that he had been on the lake drinking with friends earlier that day. Even though the evidence does not show the exact time Appellant began drinking, the assumed fact is consistent with the State's theory of the case. The hypothetical question also assumed that there was a two-hour gap between the time the person stopped drinking and the blood draw. This aspect of the hypothetical is supported by the evidence. The taxi driver called 911 immediately after Appellant failed to pay him and Officer Loser testified that he was dispatched to Murrell Park about the theft of services call at 11:30 p.m. Given that Appellant's blood was not drawn until 1:30 a.m., there was a two-hour gap between the time Appellant arrived at the park and when his blood was drawn. The hypothetical also assumed that the person drove his vehicle at 11:30 p.m., but the evidence showed that Officer Loser did not pull Appellant over until approximately 12:30 a.m. Thus the hypothetical is inaccurate in this regard. This inaccuracy

does not render the expert's testimony irrelevant, however, because Youngkin explained how he calculated the hypothetical person's BAC.

Youngkin multiplied the elimination factor of .02 grams of alcohol per hour by the two hour period which elapsed from the time Appellant stopped drinking and the blood draw to arrive at a figure of .04. This amount is added to the blood test result to arrive at a BAC of .19 at 11:30. The jury could have easily calculated that the hypothetical person's BAC would have been .17 at 12:30 a.m. which was the actual time of driving. As Youngkin explained, there was no scenario in which the person's BAC would have been below .08 at 11:30. It follows that the person's BAC would have been above .08 one hour later. Even though one of the assumed facts does not precisely fit the evidence, we conclude that the facts presented in the hypothetical question and the expert's retrograde extrapolation analysis sufficiently fit the facts and the State's theory of the case. Consequently, the trial court did not abuse its discretion by admitting the evidence over Appellant's relevance objection. Issue Seven is overruled. Having overruled each issue presented, we affirm the judgment of the trial court.


May 25, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)